## SLANDER OF TITLE.

### Common Pleas Court of Hamilton County.

GEORGE E. ALLEN AND IDA A. ALLEN v. JOHN A. SINNING AND
CORA E. SINNING.

#### Decided, February, 1909.

*Foreclosure—In an Action for, Slander of Title not a Legal Counter-
claim—Remedy of Owner—Action Against Defendants Jointly not
Maintainable, Unless—Torts—Set-off—Section 5069.*

1. An action will lie for falsely and maliciously making an oral or
   written statement regarding the plaintiff's title to specific property
   or his property rights, if special damage results therefrom; but
   where the result of the slander of the title is the breaking by a
   proposed purchaser of his contract of purchase, the weight of au-
   thority makes the bringing of an action against the defaulting pur-
   chaser for breach of contract or specific performance the proper
   remedy.

2. The same rule which prevents the bringing of an action against
   two or more persons jointly for slander, applies to cases of slander
   of title where no conspiracy or co-operation is charged.

3. In an action for foreclosure, an allegation by the defendant that
   the title to the property has been slandered by the plaintiff, can
   not be made the basis of a counter-claim, inasmuch as the tort
   alleged does not grow out of the contract upon which suit has been
   brought.

*L. F. Ratterman,* for the demurrer.
*Moulinier, Bettman & Hunt,* contra.

GORMAN, J.

Heard on demurrer to answer and cross-petition.

The causes of action set out in the petition are first, upon four
promissory notes aggregating $2,100; and secondly, a fore-
closure of a certain real estate mortgage given to secure said notes
by the defendants to the plaintiffs, which real estate is described
in the second cause of action.

The defendants answer, admitting all the allegations of the
petition.

By· way of cross-petition against the plaintiffs the defendants set up that on August 22, 1908, they entered into a contract with one Mary A. Hampton to sell to her the premises described in the petition upon certain terms (not set out in the cross-petition) involving an exchange of real estate ·and certain cash considerations, and as a part of said agreement for a sale and exchange of property, said Mary A. Hampton was to assume one of said notes described in the petition for $500 and another of the notes for $600 described in the petition, and that after said sale and exchange of property with Mary A. Hampton, defendants intended to pay off the notes described in the petition as they became due, thereby completely satisfying the obligations set out in the petition; that in part performance of said contract between defendants and said Mary A. Hampton, she took possession of said farm, the premises described in the petition, and that defendants obtained a loan for said Mary A. Hampton on her property (presumably not the property described in the petition) to enable her to carry out her contract with the defendants; that afterwards, on or about October 23, 1908, Mary A. Hampton refused to carry out the terms of her contract, and defendants are informed and believe that the reason for her said action and breach of contract with defendants was that *plaintiffs* in this case, *George E. Allen and Ida A. Allen,* falsely, maliciously and with intent to injure these defendants, stated that the title of defendants to said property was not good.

Defendants further aver that they were informed and believe that the object of plaintiff's act in slandering their title to said farm was to prevent defendants from making a sale and exchange of said farm, and thereby preventing defendants from paying the notes owing to plaintiffs, so that the plaintiffs might bring the foreclosure suit against defendants and obtain the farm back at a small price.  Defendants say that their title to said property is·a good title and that the only incumbrance upon it is the mortgage described in the petition which the said Mary A. Hampton knew of at the time of entering into her contract of sale and exchange of property with defendants.

Defendants further aver that they have not been able to dispose of said property and that they have been specially damaged

by the action of the plaintiffs in the sum of $1,500, and that they are entitled to punitive damages for the malicious, harmful and slanderous acts of the plaintiffs in the sum of $600, and they pray for judgment on their cross-petition in the sum of $2,100, which they ask may be set off against plaintiffs' claim.

Plaintiffs have filed a demurrer to this cross-petition on the ground the allegations thereof do not state a cause of action against the plaintiffs.

Counsel for defendants urge that the averments of the cross-petition constitute slander of title of defendants' property, whereby they suffered the damages resulting from a loss of the sale of the property to said Mary A. Hampton, all on account of the false and malicious *words of the plaintiffs,* and, in support of their contention, they cite Newell on Libel and Slander, page 203, where the doctrine is laid down that defamation of one's title to property, real or personal, is actionable upon the same principles of law that render defamation of character actionable; and it seems to be now well settled that an action• will lie for falsely and maliciously making an oral or written statement in disparagement of a person's title to property or a property right, which results in causing the owner special damage. *Burkitt* v. *Griffith,* 90 Cal., 536; *Newell on Libel and Slander,* pages 203-208; *Foulkard's Starkie on Slander and Libel,* p. 201.

The gravamen of the action, as in slander of the person, is the uttering of the false and malicious statement in disparagement of the title to the property. *Pater* v. *Baker,* 3 C. B., 868; *Malachy* v. *Soper,* 3 Bing. N. Cas., 382; *Wilson* v. *Dubois,* 35 Minn., 473; *Meyrose* v. *Adams,* 12 Mo. App., 331.

In respect to real property, where the false and malicious statement is that the plaintiff has no title of which he is the ostensible owner, or that his title is defective, and the assertion results in special damage to the plaintiff, an action for slander of title can be maintained. *Dodge* v. *Colby,* 108 N. Y., 445.

There is no reported case in Ohio of an action of this character that the court has been able to discover after a diligent search, and therefore the right to maintain the cause of action set up in the cross-petition herein must be determined on principle and the authorities outside of this state.

While it is well settled that an action for slander of title to real estate resulting in special damage to the owner thereof will lie, nevertheless, where the words constituting the slander of title *result in a purchaser's breaking his contract of purchase* (as is averred in the case at bar) *with the owner of the property,* it is not definitely settled that the action can be maintained; but the weight of authority appears to support the rule that in such a case the remedy of the owner is against the defaulting purchaser for breach of contract, or to compel the specific performance of the contract, and that he can not maintain an action for slander of title; the chief reason given for this rule being that the injured party can recover full satisfaction in an action against the defaulting purchaser, and that the latter (the purchaser) may perhaps have his remedy over against the slanderer of the title. *Brentman* v. *Note,* 3 N. Y. Supp., 420; *Burkitt* v. *Griffith,* 90 Cal., 533; *Walkley* v. *Bostwick,* 49 Mich., 374; *Paull* v. *Halferty,* 63 Pa. St., 46.

If the right to maintain this action on the cross-petition be claimed to be grounded, not on slander of title, but on the principle of interference with contract relations, as a specific tort, which doctrine is of recent origin, we must consider whether or not it is one of those contracts for which an action will lie on account of a wrongful and malicious interference with contract relations.

The early common-law gave a remedy in damages for interference with contract relations only when the contract was one between master and servant. *Lumley* v. *Gye,* 2 El. and Bl., 216.

This view is still vigorously maintained in many American jurisdictions. *Boyson* v. *Thorn,* 98 Cal., 578; *Chambers* v. *Baldwin,* 91 Ky., 121; *Glencoe, etc., Land Co.* v. *Hudson Bros.,* 138 Mo., 439; *McCann* v. *Wolff,* 28 Mo. App., 447.

But the more advanced and fully developed doctrine now prevailing in this country is thus stated by Justice Brewer, of the United States Supreme Court:

"If one maliciously interferes in a contract between two parties, and induces one of them to break that contract to the injury of the other, the party injured can maintain an action against the wrongdoer." *Angle* v. *The Chicago, etc., R. R. Co.,* 151 U. S., 13.

See, also, *Temperton* v. *Russell* (1893), 1 Q. B., 715; *Chipley* v. *Atkinson*, 23 Fla., 218; *Jones* v. *Stanley*, 76 N. C., 355.

It appears to the court that notwithstanding the fact that the weight of authority is against the right of the injured party to recover for slander of title, where the slanderous words result in a purchaser breaking his contract of purchase, the reason and logic of the case is in favor of the doctrine laid down as above quoted from Justice Brewer; and the court is further of the opinion that full compensation can not in all cases be recovered in an action for specific performance against the defaulting pur- in an action for damages or specific performance against the defaulting purchaser. Certain it is that he could not recover punitive damages as he could do in an action for slander of title.

If it were not for another defect in the cross-petition now to be pointed out, and the further fact that the court is of the opinion that the averments of the cross-petition do not constitute a coun- ter-claim, the court would be inclined not to follow the weight of authority; but inasmuch as it appears that the action can not be maintained for the reasons now to be given, it is thought best to hold that the remedy of the defendants in this case is an action against the defaulting purchaser for specific performance of the contract, or damages for a breach thereof, or both.

The cross-petition alleges that the defamatory statement was made *by the plaintiffs,* and it is s..ght to recover from them as for a joint *slander of title.*

It is a general rule that an action for the utterance of slander- ous words can not be maintained against *two or more persons jointly,* for the very simple reason that two or more persons can not at the same time and place utter the same slanderous words, and even if they could do so, nevertheless, the remedy would be an action against *each* and *not against two or more.* The same rule applies in cases of slander of title *where no conspiracy or co-operation is charged.* *Webb* v. *Cecil*, 9 Ben Monroe, 198.

The court is of the opinion that the cross-petition is also open to demurrer, under Section 5076, Revised Statutes, on the ground that the facts stated do not constitute a counter-claim. Section 5069, Revised Statutes, defines a counter-claim as a cause of ac-

tion existing in favor of a defendant and against a plaintiff or another defendant or both, between whom a several judgment might be had in the action and arising out of the contract or transaction set forth in the petition as the foundation of plaintiff's claim, or connected with the subject of the action.

Now the facts set up in the cross-petition do not arise out of the contracts set up in the petition. The causes of action therein set up are upon four promissory notes and a foreclosure of a real estate mortgage given to secure the said notes. The fact that the title to the property upon which the mortgage was given, which is described in the petition and a foreclosure of the mortgage thereon asked, is alleged to have been slandered, does not indicate that the cause of action set up in the cross-petition arises out of the contracts set up in the petition, nor that the cause of action arises out of the transactions set forth in the petition.

The facts stated in the cross-petition disclose a case of tort. Now, while a defendant may counter-claim a tort in an action on contract, nevertheless, it is well settled that under Section 5069, Revised Statutes, the tort must grow out of the contract sued upon in the petition, or arise out of the transaction therein set forth.

In the case of *Devries* v. *Warren*, 82 N. Car., 356, it was held in an action by the vendor of a life estate in land to recover the agreed price, that the defendant, who was the reversioner, could not set up a counter-claim for damages done by the plaintiff to the inheritance of the defendant by cutting timber or committing other waste before the sale of the life estate.

For a similar rule laid down in other cases, see, *Lundine* v. *Callaghan*, 82 App. Div., 621 (81 N. Y., 1052) ; *Heckman* v. *Schwarlz*, 55 Wis., 173; *Helwig* v. *Laschowski*, 82 Mich., 619.

In the case of *Oliver* v. *Canan*, 71 O. S., 360, the court, Judge Spear announcing the opinion, at page 366 defines counter-claim and shows the distinction between it and a set-off and in what kind of cases a counter-claim may be set up.

It seems to the court that upon consideration of the character of the claim made in the cross-petition counsel for the defendants will agree with the court that this cause of action is not

a counter-claim, and can not be set up in the answer. Of course, it will not be claimed that it is a set-off, in as much as the cause of action is purely a tort, and set-off must arise on contract or a judgment of a court.

For the reasons given the demurrer will be sustained.